**SIGNED THIS: October 31, 2025**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    25-70566 |
| DAVID CHOATE HUGHES II, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DAVID CHOATE HUGHES II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    25-07011 |
| | ) | |
| MITCHELL MIMS, MIMS-IPR, LLC, | ) | |
| JACKSON NEAL, CURTIS H. SEAL, | ) | |
| BLAKE MILNER, and EMILY | ) | |
| GRACE ERWIN, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N

Before the Court is a Motion to Dismiss filed by Defendants Jackson Neal,

Curtis H. Seal, Blake Milner, and Emily G. Erwin and a Motion to Dismiss filed

by Defendants Mitchell Mims and MIMS-IPR, LLC. For the reasons set forth herein, both Motions to Dismiss will be granted, the complaint filed by Plaintiff David Choate Hughes II will be dismissed without prejudice, an order will be entered abstaining from hearing matters related to pending Alabama litigation, and an order will be entered in the bankruptcy case *sua sponte* lifting the automatic stay to allow the Alabama case to proceed.

## I.      Factual Background

David Choate Hughes II ("Debtor"), acting pro se, filed his voluntary Chapter 11 petition in the Central District of Illinois on July 10, 2025. On July 17, 2025, the Debtor filed his complaint commencing the above-captioned adversary proceeding against Mitchell Mims, MIMS-IPR, LLC, Jackson Neal, Curtis H. Seal, Blake Milner, and Emily Grace Erwin. The Clerk issued summons for each Defendant on July 23, 2025.

The Debtor filed a "Notice of Completed Summons Service Under Federal and Illinois Law" on August 8, 2025, stating that service was made on Mitchell Mims and MIMS-IPR, LLC via FedEx on July 30, 2025, and that service was attempted on Defendants Neal, Seal, Milner, and Erwin at their professional address via UPS Ground on July 30, 2025, but rejected at the point of delivery. Attached to the filing are images of (1) a UPS Ground packing slip with a return sticker placed over the delivery address and handwritten note suggesting delivery was attempted on July 30, 2025, (2) a printout from the UPS website showing tracking history for an unspecified package that was "refused by the receiver" on

July 30, 2025, (3) a copy of a printed receipt from a shipping store in Springfield, Illinois, and an email from the store confirming a FedEx shipment addressed to Mitchell Mims and delivered to an Alabama address, (4) a computer screenshot purportedly containing shipment information that is otherwise not legible, and (5) scanned copies of certificates of service completed by the Debtor asserting service on the Defendants by regular mail on July 28, 2025.

A status hearing was set and held August 21, 2025, for the Court to address the service of summons which it found to be defective.[1] But the Debtor failed to appear at the hearing, and the Court simply removed the matter from the hearing docket and said it would leave the issues of service to be resolved through the natural progression of the case. The next day, Defendants Erwin, Milner, Neal, and Seal, through counsel, and Defendants Mims and MIMS-IPR, LLC, through counsel, filed their respective Motions to Dismiss that are now before the Court.

Both Motions to Dismiss assert two grounds for dismissal: insufficient service of process and failure to plausibly state a claim for relief. Each Motion to Dismiss also asks the Court to abstain from hearing the dispute as an alternative to dismissal. The Defendants contend that service was insufficient here because, while service by "first-class" mail is permitted under the Bankruptcy Rules, service via FedEx or UPS is not the same as "first-class" mail and therefore a defective method of service. As to the adequacy of the complaint itself, the

---

[1] The notice of hearing was issued August 11, 2025 (#17), and sent to the Debtor at the email address provided to the Court in connection with the adversary proceeding and his underlying bankruptcy case for purposes of notice.

Defendants contend that the Debtor largely pleads legal conclusions directed at no particular Defendant and that, to the extent factual allegations are set forth, they lack enough detail to support any of the asserted causes of action and include allegations against persons other than the named Defendants. In support of their abstention arguments, the Defendants note that the dispute relates to pending litigation filed in Alabama state court on July 8, 2025, involving rightful ownership of real property located in Alabama.[2] The Defendants assert that they have no apparent connection to Illinois and that the Alabama court is situated to resolve the disputes expeditiously without adversely affecting the administration of the Debtor's bankruptcy case. Attached to both Motions to Dismiss are several documents, including correspondence from the Debtor regarding service, the purported proof of service filed by the Debtor, and state court filings related to the pending Alabama litigation.

On August 27, 2025, the Debtor filed a certificate of service stating that he served a copy of the summons and complaint on the Defendants by "Certified U.S. Mail" on August 12, 2025. The filing also states that the Defendants were served by email. Receipts and tracking information for the mailings were also attached.

The Debtor thereafter filed a combined response to both Motions to Dismiss, largely taking issue with the completeness of the exhibits attached to the Motions to Dismiss and seeking to bolster his claims or otherwise litigate the

---

[2] The case was filed in the Circuit Court of Chilton County, Alabama, by MIMS-IPR, LLC against Genie Investments, LLC, Tenant First Homes, David Hughes, John Michael Cohan, and other unknown individuals or entities and was assigned case number CV-2025-900132.00.

underlying dispute with reference to his own exhibits totaling almost 170 pages that he attached to his response. To the extent he responds to the substance of the Motions to Dismiss, the Debtor counters that he did properly serve the Defendants by mail via the United States Postal Service, presumably referring to the certificate of service he filed on August 27, 2025. The Debtor also contends that his complaint states plausible claims for relief because lien fraud and stay violations are core bankruptcy claims and that the complaint, "read in conjunction with the attached exhibits," easily meets even the highest pleading standards. Finally, the Debtor contends that abstaining from any of the causes of action asserted would result in grave injustice by forcing him to litigate in a "compromised forum" and erode the integrity of the bankruptcy process.

Before the time had run for the Defendants to file their reply to the Debtor's response to the Motions to Dismiss, the Debtor filed a Notice of Potential Fraud on the Court, a Motion for Sanctions for Bad-Faith Conduct, and a Motion to Strike Defendant's Motion to Dismiss [Docket No. 30].[3] The Defendants filed their replies to the Debtor's response to the Motions to Dismiss, urging the Court to strike several exhibits attached to the Debtor's response and asking the Court to quash service as insufficient, dismiss the action, or abstain from hearing the Debtor's claims until the underlying Alabama litigation is resolved. The Debtor, in turn, then filed a Motion to Consider Exhibits, and, in the Alternative, for

---

[3] These were filed by the Debtor together with his business associate, John Michael Cohan, who filed a Motion to Intervene as Interested Party the same day. An order was entered September 30, 2025, holding the Motion to Intervene in abeyance pending decision on the Defendants' Motions to Dismiss. Orders were also entered denying the Motion for Sanctions and Motion to Strike as to Mr. Cohan and taking the matters under advisement as to the Debtor.

Leave to Amend Complaint and a Motion to Confirm Service, and, in the Alternative, for Leave to Effectuate Proper Service, followed by a Notice to Correct the Record taking issue with the Defendants' characterization of the exhibits attached to the Debtor's response to the Motions to Dismiss.

After the response deadlines for the Motions to Dismiss had passed, the Court took the Motions to Dismiss, along with the Debtor's Motion for Sanctions, Motion to Strike, Motion to Consider Exhibits, and Motion to Confirm Service, under advisement.[4] The Motions to Dismiss are now ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate, orders to turn over property of the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (E), (O); *Long Beach Acceptance Corp. v. City of Chicago (In re Madison)*, 249 B.R. 751, 756-57 (Bankr. N.D. Ill. 2000) (actions

---

[4] Since the matters were taken under advisement, the Debtor has filed a Supplemental Notice to Correct the Record, a Status Report Regarding Evidentiary Dispute and Rule 9011 Safe Harbor Proceedings, a Combined Motion for Sanctions and for Relief from Fraud on the Court, a Notice of Supplemental Authority, and a Notice of Applicable Judicial and Ethical Standards and Resulting Harm to the Estate. To the extent these additional filings seek affirmative relief from the Court, they will be addressed in due course but were not considered as part of this Opinion.

to enforce the automatic stay are core proceedings); *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999).

Four of the six counts in the complaint, however, do not arise exclusively under the Bankruptcy Code and do not strictly arise in a bankruptcy case. And, to the extent this Court has jurisdiction over the "non-core" claims, it would be exercising "related to" jurisdiction in this proceeding. Ordinarily, questions about jurisdiction would need to be resolved for any final order or judgment to be given effect. And an order abstaining under §1334(c) is a final order. Even so, there is no impediment to a bankruptcy court entering a final order declining jurisdiction that it does not have or that it determines should not be exercised. *In re Heotis,* 2018 WL 1534970, at *4 (N.D. Ill. Mar. 29, 2018); *Official Unsecured Creditors' Committee v. Cohen (In re Hearthside Baking Co.),* 391 B.R. 807, 811 (Bankr. N.D. Ill. 2008) (Abstention under §1334(c) is "a matter that, by its very nature, could exist only in connection with a bankruptcy case, and is a matter over which a bankruptcy court exercises core jurisdiction, with the authority to enter final orders therein.) *But see Meritage Homes Corp. v. JPMorgan Chase Bank,* 474 B.R. 526, 536-39 (Bankr. S.D. Ohio 2012) (acknowledging underlying action as being noncore and opting to issue report and recommendation for abstention to district court). Should a higher court determine that this Court could not enter a final order on abstention or that the order dismissing the action without prejudice is a final order, this Opinion should be construed as a recommendation to the District Court for dismissal and abstention.

### III.    Legal Analysis

#### A.    Dismissal

##### i.    Insufficient Service of Process

Bankruptcy Rule 7004(b) permits, as an alternative to the methods authorized under Federal Rule of Civil Procedure 4(e)–(j), service of a copy of a summons and complaint by "first-class mail, postage prepaid, within the United States." Fed. R. Bankr. P. 7004(b). The Seventh Circuit has definitively held that service by private carrier like FedEx does not constitute "first-class mail" under federal service rules. *Audio Enters., Inc. v. B&W Loudspeakers of Am.*, 957 F.2d 406, 409 (7th Cir. 1992). Other circuit courts have reached similar conclusions. *See, e.g., Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1431 (9th Cir. 1996) (explaining that FedEx is not mail for purposes of service under Rule 4, and to interpret the term "mail" differently for purposes of different rules would cause great confusion).

Although *Audio Enterprises* dealt with language in a version of Rule 4 that has since been removed by amendment, at least one bankruptcy court has applied its holding and similar holdings by other circuit courts to the same language in the current version of Bankruptcy Rule 7004. *In re Diloreto*, 2008 WL 141922, at *4-5 (Bankr. E.D. Pa. Jan. 11, 2008). Acknowledging that the wisdom of limiting valid service under Bankruptcy Rule 7004(b) to first-class mail in the modern world could be debated, the court in *Diloreto* determined it was bound by the procedural rules as promulgated by the Supreme Court and authorized by Congress and that, if change is warranted, it will have to come

through amendments to those rules. *Id* at *4. This Court agrees with the reasoning of *Diloreto*, and, as a federal court in the Seventh Circuit, it is bound by Seventh Circuit precedent. Thus, the Debtor's attempt to serve the Defendants via FedEx and UPS here was insufficient for purposes of service by "first-class mail" under Bankruptcy Rule 7004(b).

Bankruptcy Rule 7004(b), however, also permits service by methods authorized by Federal Rule of Civil Procedure 4(e)–(j). And Rule 4(e)(1) authorizes service on an individual in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). The same method of service is appropriate for a corporation, partnership, or unincorporated association. Fed. R. Civ. P. 4(h)(1)(A). This Court sits in Illinois, and service was attempted on the Defendants in Alabama. The question then is whether Illinois or Alabama state law permits service via FedEx or UPS such that the Debtor's use of the carriers in this case satisfies service requirements notwithstanding Bankruptcy Rule 7004(b).

As it relates to Illinois law, the issue can be disposed of summarily. Illinois does not generally permit service by mail—let alone commercial carrier. With certain exceptions not applicable here, service must be executed by a person so authorized and be made personally or by leaving a copy at the intended recipient's usual place of abode. 735 ILCS 5/2-202, 5/2-203, 5/2-204, 5/2-205; *see also* 805 ILCS 180/1-50 (providing for service on limited liability company to

be made either upon the registered agent appointed by the company or upon the Secretary of State if no agent can be found). Neither service method was used here, and the Debtor's reliance on 735 ILCS 5/2-203.1 is misplaced. Section 5/2-203.1, which is titled "Service by special order of court," does provide for alternate methods of service upon motion by the plaintiff and order of court when personal service is impractical. 735 ILCS 5/2-203.1. But the statute plainly lays out the technical requirements for requesting permission to serve by alternate means, and no such request was made by the Debtor here. Further, upon review of the cases cited by the Debtor in support of his contention that service by mail is allowed in Illinois, the Court finds those cases to be nonexistent or otherwise inapposite. The Debtor has not shown that service or attempted service by commercial carrier was adequate under Illinois law.

Alabama law, on the other hand, expressly authorizes service via commercial carriers if certain requirements are met. Defining "commercial carrier" as any business entity "that has as its primary purpose the delivery of letters and parcels of any type," Alabama Rule of Civil Procedure 4(i)(3) requires that the commercial carrier provide a "written or electronic receipt showing to whom the process and complaint or other document to be served was delivered, the written or electronic signature of the recipient, the date of delivery, the address where delivered, and the person or entity effecting delivery." Ala. R. Civ. P. 4(i)(3)(A)(ii)–(B)(ii). In addition, the serving party is required to file with the court immediately upon delivery to the commercial carrier for service an affidavit verifying that the "document to be served has been delivered to a commercial

carrier" in accordance with the rules. Ala. R. Civ. P. 4(i)(3)(B)(ii). Then, within 10 days of receiving the commercial carrier's written or electronic delivery receipt, the serving party is required to file with the court a proof of service that "identifies the common carrier and explains the method of service, states the name of the person served, notes the date of delivery, and has attached a printed copy of the commercial carrier's written or electronic delivery receipt or other evidence of delivery." Ala. R. Civ. P. 4(i)(3)(C). Under Alabama law, "strict compliance with the rules regarding service of process is required." *Ex parte Pate*, 673 So. 2d 427, 429 (Ala. 1995) (citation omitted).

Here, the Clerk issued summons for each Defendant on July 23, 2025, and, on August 8, 2025, the Debtor filed his notice of completed summons service stating that Defendants Mims and MIMS-IPR, LLC were served via FedEx on July 30, 2025, and that service on Defendants Erwin, Milner, Neal, and Seal was attempted via UPS on July 30, 2025, but returned undelivered. Although the notice filed by the Debtor included several attachments purporting to show delivery was made or at least attempted, none of the attachments satisfy the requirements for service by commercial carrier under Alabama procedural rules.

Regarding the Mims Defendants, the copy of the receipt and confirmation email from the shipping store in Springfield, Illinois, are inadequate for two reasons: (1) they do not identify who received the FedEx delivery, and (2) they do not show the written or electronic signature of the recipient. That the shipment may have been delivered to the proper address "does not give rise to a presumption that the proper person was served." *Johnson v. Hall*, 10 So. 3d

1031, 1036 (Civ. App. Ala. 2008) (finding service invalid where certified mail receipt lacked the recipient's name and bore only an illegible signature). The identity and signature of the person served are necessary for effective service by commercial carrier under Alabama law, and the Debtor's failure to establish as much through the documents attached to his notice makes the service insufficient under Alabama law as to Mitchell Mims and MIMS-IPR, LLC.

As for Defendants Erwin, Milner, Neal, and Seal, the attempted service on them is likewise defective. The copy of the UPS packing slip and tracking history provided by the Debtor do not even show the intended address to which the summons and complaint were to be delivered, only that delivery was refused. Because delivery was refused, it is not surprising that no recipient or signature is shown. But the documents do not even identify who refused shipment. Nor is the fact that delivery may have been refused by an unidentified person a defense to effectuating good service. Subsection (e) of Alabama Rule of Civil Procedure 4 outlines a procedure to be followed when service of process is refused, but that procedure does not apply to refusals of attempted service by commercial carrier. Ala. R. Civ. P. 4(e); Committee Comments on 2023 Adoption of Ala. R. Civ. P. 4(i)(3) (Rule 4(e) applies only to attempted service by certified mail or by a process server; it "does not apply to refusals of attempted service by commercial carrier.") The Committee Comments state that "[i]f attempted service by commercial carrier cannot be completed, the serving attorney or party will have to reattempt service by commercial carrier or attempt a different form of service." Committee Comments on 2023 Adoption of Ala. R. Civ. P. 4(i)(3). The Debtor's attempt to

effectuate and prove service on Defendants Erwin, Milner, Neal, and Seal via UPS was inadequate under Alabama law.

To be sure, the Debtor says in his response to the Motions to Dismiss that he served the Defendants by mail via the United States Postal Service, attaching to his response (1) the certificate of service he filed on August 27, 2025, asserting service completed by "certified U.S. mail" on August 12, 2025, (2) a copy of a receipt from the shipping store in Springfield, Illinois, and (3) a copy of tracking information from the USPS website.[5] Service of summons and the complaint was required to be made within 7 days of issuance of the summons. Fed. R. Bankr. P. 7004(e)(1). The Debtor's mailing of summons and the complaint on August 12, 2025, however, was 20 days after the summons were issued by the Clerk on July 23, 2025. When the time had passed for the Debtor to serve the summons issued, it was his responsibility to request alias summons to restart the clock for service. *Id.* But the Debtor did not request that new summons be issued, and his second attempt at service by mailing summons and the complaint to the Defendants through the United States Postal Service was therefore also defective.

Compounding matters, October 15, 2025, marked the 90th day after the complaint was filed and the last day for the Debtor to effectuate service on the Defendants. Fed. R. Civ. P. 4(m). But, as discussed, the Debtor's attempts at service were not effective, and his failure to serve the Defendants within 90 days

---

[5] The Debtor asserts that service was done by certified mail, but the tracking history does not reflect that signatures were obtained from the delivery recipients. The tracking history does show, however, that delivery to Defendant Erwin was attempted but not completed. Because the Debtor's second attempt at service was inadequate for other reasons, it is not necessary to analyze issues involving certified mail as an effective means of service.

of the complaint filing warrants dismissal of the proceeding unless the Debtor shows good cause for extending the time for service.

The Debtor had actual notice of this requirement. On July 23, 2025, the Clerk entered a notice on the case docket regarding the issuance of summons, the requirement that the summons and complaint be served within 7 days, that an alias summons would need to be requested if service was not made within 7 days, and that failure to effectuate service within 90 days of the filing of the complaint could result in dismissal. The notice was mailed to the Debtor at the address provided by him in connection with his bankruptcy case and this proceeding. The Debtor also failed to appear at the hearing set on the issued summons when his first attempt at service appeared defective, notice of which was sent to the Debtor at the email address he provided for notices. Following the hearing, the Defendants filed their Motions to Dismiss challenging service.

Rather than take the time to review court notices or appear at the hearing intended to discuss with him the service deficiencies, the Debtor engaged in a flurry of other activity, including filing documents in the proceeding—some attacking the Defendants' Motions to Dismiss and seeking to justify his own actions, others wholly unrelated to the pending issues before the Court. Amid everything, he apparently tried to cure service defects by attempting service a second time through other means; but he did so with stale summons, making the attempt ineffective. All the while the Debtor has continued to file a litany of motions and notices, including a motion asking the Court to recognize his attempts as valid service or to grant him leave to cure the deficiencies. But at no

point has the Debtor requested an alias summons, even after the issue was raised in the Defendants' responsive filings.

Because the Debtor, despite having notice of the requirements, failed to serve the Defendants in the time allowed under Federal Rule of Civil Procedure 4(m), and because extending the time to complete service would not cure the defects in pleading addressed below, the Court finds no good cause shown and that dismissal of the adversary proceeding for insufficient service of process as to all Defendants is appropriate.

*ii.    Failure to State a Claim*

The Motions to Dismiss also contend that the complaint itself fails to state a plausible claim for relief. To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint need only allege enough factual allegations to plausibly suggest a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. That is, a complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). *Twombly* "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While detailed specifics may not be required, there must be some facts alleged to support each element of the cause of action. *Iqbal*, 556 U.S. at 678-79; *see also Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098-99 (7th Cir. 2015).

"A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Iqbal*, 556 U.S. at 678; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). Those well-pleaded facts, however, must "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal,* 556 U.S. at 679.

The Defendants correctly point out that the Debtor's complaint does not contain enough factual detail to plausibly state a cause of action. The factual allegations cover an array of topics, many of which have no apparent connection to the causes of action asserted or the named Defendants, and the allegations are largely comprised of unsupported assumptions and legal conclusions. The causes of action themselves are laid out in six separate counts consisting of nothing more than labels and vague assertions that give little if any indication as to which Defendants they seek relief against or the factual basis for relief sought. Perhaps most critically, the complaint does not identify the properties at

the heart of action. These defects are enough to warrant dismissal. A review of each count reveals deeper problems.

### 1.    Count I

Count I seeks a declaratory judgment pursuant to 28 U.S.C. §2201 as to the validity of the "UCC lien and foreclosure," the dissolution of MIMS-IPR, LLC, and the "Defendants['] lack [of] legal authority to interfere." As discussed, the complaint fails to identify the properties or the Defendants over which declaratory relief is sought, making it impossible to evaluate the claim for relief. It is, however, sufficiently evident that Count I relates to matters at issue in pending litigation in Alabama state court. Critically, it is within a federal court's discretion to exercise the jurisdiction it has over an action for declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-86 (1995). And where, as here, the declaratory relief action involves issues or questions that are the subject of another suit pending in state court between the same parties, it is appropriate for the federal court to decline hearing the request for declaratory relief. *Id.*; *Amling v. Harrow Indus. LLC,* 943 F.3d 373, 379-80 (7th Cir. 2019) (declining to hear declaratory action when there is pending state court action involving the same issues and parties is "classic example" of properly exercised discretion). Thus, this Court would decline to hear Count I even if the Debtor set forth allegations in sufficient detail. Count I will be dismissed without prejudice.

2.    Count II

The same goes for Count II, which seeks to "quiet title to the foreclosed properties and remove any adverse claims." Again, the Debtor's failure to identify the properties and Defendants over which relief is sought is fatal to the cause of action. But, as with Count I, it would be inappropriate for this Court to hear and decide the Debtor's quiet title action "when there is an ongoing parallel action in state court." *LaDuke v. Burlington Northern R.R.,* 879 F.2d 1556, 1558 (7th Cir. 1989) (discussing and applying the abstention doctrine established in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)); *Williams v. Quantum Servicing Corp.,* 2013 WL 271669, at *2-3 (N.D. Ill. Jan. 23, 2013).

The court in *Williams* explained that "formal symmetry is not required for suits to be sufficiently parallel[;]" what is important is that there is a substantial likelihood that the state court litigation will dispose of the claims presented in the federal action. *Williams*, 2013 WL 271669, at *3. Similar to the facts in *Williams*, the central issues on which the Alabama case and the Debtor's action to quiet title here are premised relate to the validity of foreclosure actions and the relative rights and interests of parties in the subject properties, and it appears likely that the state-court proceeding would dispose of the claims presented in the Debtor's quiet title action. *Id.* The Alabama litigation is sufficiently parallel to the Debtor's quiet title action here.

Although abstention under *Colorado River* is the exception rather than the rule, *Colorado River,* 424 U.S. at 813, several courts have held that abstention was warranted in circumstances involving state law issues of wrongful

foreclosure not unlike the present case. *See, e.g., Dunlap v. Nationstar Mtg. LLC,* 2014 WL 13111345, at \*4 (N.D. Ill. Mar. 28, 2014) (collecting cases from the Northern District of Illinois applying *Colorado River* doctrine in favor of state court foreclosure disputes); *Goodrich v. Bank of Am.,* 2013 WL 12061842, at \*8 (N.D. Ga. Aug. 9, 2013) (collecting cases from the Third, Sixth, Seventh, and Eleventh Circuits abstaining in favor of state court wrongful foreclosure cases), *recommendation adopted as to abstention but rejected as to dismissal*, 2013 WL 12065413, at \*1-2 (N.D. Ga. Sept. 24, 2013). To be sure, a specific finding that "exceptional circumstances" exist is necessary to justify deference to state court. *LaDuke*, 879 F.2d at 1559-61.

Courts often consider several, non-exclusive factors that can help inform whether "exceptional circumstances" exist. *Id.* Although a court should consider any factor it finds particularly relevant to the case before it, the most commonly applied factors involve the basis and timing of invoking jurisdiction in each forum, the relative progress of each action, the source of governing law, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the vexatious or contrived nature of the federal claim. *Id.* at 1559 (citing *Lumen Const., Inc. v. Brant Const. Co.,* 780 F.2d 691, 694-95 (7th Cir. 1985)). The circumstances here weigh in favor of abstaining.

The Alabama action was filed first, invoking jurisdiction over the parties' disputes and issues governed by Alabama foreclosure, deed recording, business organization, and contract laws. And while the case there has not progressed significantly, here the Debtor's complaint has not been properly served and fails

to state a claim as pleaded. It would be inconvenient for this Court to decide issues under Alabama law, and retaining jurisdiction over the Debtor's quiet title claim would not save his other claims that cannot be decided by this Court. Further, there is certainly some gamesmanship to the Debtor bringing the quiet title action here after being sued in state court, and the fact that this Court has jurisdiction over the res of the Debtor's bankruptcy estate does not render the Alabama court incapable of resolving the parties' state-law disputes. And even though not brought under the Declaratory Judgment Act, Count II essentially seeks declaratory relief that would be unnecessary in light of the previously-filed Alabama litigation which will presumably move forward against defendants not in bankruptcy. *Nelson v. Orlando Residence, Ltd.,* 2007 WL 4305549, at *1 (E.D. Wis. Dec. 5, 2007) (although not brought explicitly under Declaratory Judgment Act, equitable action to quiet title sought relief that was declaratory in nature). The Court therefore would not hear Count II even if it stated a claim upon which relief could be granted. And, because it fails to state a plausible claim for relief, Count II will be dismissed without prejudice.

### 3.    Count III

Count III is based on alleged violations of the automatic stay and is perhaps the closest the Debtor comes to stating a claim upon which this Court could grant relief. But it suffers from similar pleading defects and therefore fails to meet the required standards. Count III states that the "Defendants knowingly violated the automatic stay post-petition through continued litigation and third-

party interference." But it does not say which Defendants did what, and no other allegations in the complaint support the bald assertion that any Defendants "continued litigation" in violation of the automatic stay after the petition was filed. In his response to the Motions to Dismiss, the Debtor focuses on an email received from Defendant Neal one day after the bankruptcy case was filed, acknowledging the bankruptcy but also informing the Debtor of active attempts to serve him with a copy of the temporary restraining order ("TRO") entered in the Alabama case. The Debtor contends that this is evidence of intent to violate the automatic stay. Yet that same day, according to the allegations in the complaint, the Alabama state court entered an order staying the TRO based on the bankruptcy filing. Whatever Defendant Neal's stated intent, the fact that the TRO was stayed just a few hours after he sent his email undercuts the Debtor's assertion that any Defendants "continued litigation" in violation of the automatic stay or that the Debtor suffered any injury.

There is an allegation that "[d]espite notice of the bankruptcy, Defendants contacted escrow agents, tenants, and title companies to obstruct real estate closings and rent collection[,]" but, again, the lack of specifics and the record before the Court do not support an inference in the Debtor's favor. The complaint here was filed within a week of the bankruptcy petition. The Defendants were not included on the mailing matrix for the bankruptcy case, and the Debtor did not file his required statements and schedules of property listing Alabama real estate until two weeks after the bankruptcy petition. In his response to the Motions to Dismiss, the Debtor points to an undated text message purportedly

sent by Mitchell Mims regarding the removal of yard signs from an unidentified property and a chain of emails between nonparties regarding prepetition UCC filings. Neither is helpful; to the contrary, the additional details cast serious doubt on the Debtor's claims that whatever actions one or more Defendants might have taken were taken in the seven-day window the bankruptcy was pending before the adversary complaint was filed. It suffices to say, for now, that the complaint fails to state a plausible claim for violations of the automatic stay. Count III will therefore be dismissed.

The dismissal of Count III will be without prejudice, but the Debtor is admonished that, in deciding how to proceed, he should carefully consider whether he has a viable claim for relief and whether pursuing such claim through another adversary complaint is the best course of action. Section 362(k) provides for the recovery of damages for injury caused by any willful violation of the automatic stay, and nothing presented to the Court thus far suggests any injury to the Debtor caused by a stay violation. Of course, if the Debtor has in fact been injured by a willful violation of the automatic stay, he may seek relief under §362(k) by motion without the need for an adversary proceeding.

### 4.   Count IV

Count IV seeks to "permanently enjoin Defendants from: (a) filing pleadings related to the properties; (b) contacting tenants, escrow agents, or title insurers; (c) representing or acting on behalf of MIMS-IPR, LLC." Importantly, a permanent injunction is a remedy rather than a separate cause of action.

*Missouri Pet Breeders Assoc. v. County of Cook*, 106 F. Supp. 3d 908, 927 (N.D. Ill. 2015); *Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.)*, 645 B.R. 10, 37 (Bankr. S.D.N.Y. 2022). And if asserted with other causes of action and the causes of action upon which the request for injunction is premised fail, then the claim for permanent injunction cannot stand alone and must be dismissed. *Id.* The request for injunctive relief here is seemingly premised on Counts I, II, and III which, as discussed, fail to state a claim upon which relief can be granted. For that reason alone, Count IV is properly dismissed.

There are other problems with the request for injunctive relief. For one, it seeks to enjoin conduct already covered by the automatic stay, calling into question the need for such additional relief. And second, it seeks to enjoin Defendants from actions that they would be lawfully permitted to take to assert and protect their own rights in the bankruptcy case or, with proper relief from the automatic stay, through litigation in an appropriate forum without being preempted by the bankruptcy court. *Reuland v. IRS (In re Reuland)*, 591 B.R. 342, 352 (Bankr. N.D. Ill. 2018); *Toledo Trust Co. v. Derryberry (In re Hartley)*, 36 B.R. 594, 596-97 (Bankr. N.D. Ohio 1983).

Count IV will be dismissed without prejudice. But, because it is a remedy and not a separate cause of action, Count IV cannot be refiled without a related, stand-alone claim upon which relief can be granted.

5.    Count V

Count V seeks "turnover of rents collected and imposition of a constructive trust on diverted funds." But, again, the complaint fails to identify the properties from which rents were collected or funds diverted, fails to identify the Defendants from whom turnover is sought, and fails to allege with any detail facts to support the Debtor's claim that he has a legal or equitable interest in the property at issue. Count V fails for these reasons, but it also puts the cart before the horse. *DII Northwest LLC v. Carey (In re National Jockey Club)*, 451 B.R. 825, 830 (Bankr. N.D. Ill. 2011).

When the Debtor filed his bankruptcy petition, the parties' disputed rights to certain real and personal property in Alabama were the subject of pending state court litigation in which a TRO had entered barring the Debtor from engaging in a variety of conduct related to the property at issue. "Turnover is not intended as a method of determining the disputed rights of parties; it is intended as a remedy to obtain what is already acknowledged to be property of the bankruptcy estate." *Id.* "A turnover action cannot be used as a tool to acquire property the debtor did not have a right to possess or use at the commencement of a case." *Id.* The parties' respective rights in property upon which the Debtor's claim for turnover is based are far from settled and were actively being litigated in state court when the Debtor's bankruptcy was commenced.

The complaint fails to allege a basis upon which to believe, notwithstanding the pending Alabama litigation, the property at issue belonged

to the estate on the date the Debtor filed his bankruptcy petition; dismissal is
therefore appropriate. *Id.* Count V will be dismissed without prejudice.

### 6.    Count VI

Count VI is labeled "Abuse of Process and Fraud on the Court" and simply
alleges that "Defendants filed pleadings post-bankruptcy without standing and
obtained a TRO based on false representations." As with all the other causes of
action, Count VI does not identify the Defendants against whom the allegations
are made. Nor is it at all clear what "pleadings" were filed and in which court or
case they were filed. Elsewhere in the complaint, the Debtor does accuse
Defendant Mims of filing papers to revive MIMS-IPR, LLC and unrecord deeds in
Alabama state court without standing, but the Debtor also plainly asserts that
the alleged conduct occurred before the bankruptcy filing. It therefore seems the
Debtor is complaining about filings in connection with the bankruptcy case—a
grievance raised in a motion to strike filed earlier in this proceeding that sought
to strike all filings by Defendants Mims and MIMS-IPR, LLC and bar them from
further filings based on lack of standing. As the Court explained at a September
9 hearing before denying the motion to strike, there is absolutely no legal
authority for barring a defendant from responding to or defending against
litigation when the plaintiff named them as a party in the litigation and seeks
adverse relief against them.

In order to state a cause of action for abuse of process under Illinois law,
a plaintiff must plead facts showing (1) "the defendant instituted proceedings

against him for an improper purpose, such as extortion, intimidation, or embarrassment[,]" and (2) there was a misapplication of process, meaning "the process was used to accomplish some result that is beyond the purview of the process." *Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d. 732, 747 (N.D. Ill. 2012) (citation omitted) (internal quotation marks omitted); *accord Vasser v. Town of Leesburg*, 2019 WL 6036799, at *3 (N.D. Ala. Nov. 14, 2019) (applying similar elements under Alabama law).

The tort of abuse of process is not favored under Illinois law and the elements are strictly construed. *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 843 (N.D. Ill. 2013) (citation omitted). "When process is used only for its intended purpose, there has been no misapplication of process." *Rubloff Development*, 863 F. Supp. 2d at 747 (citation omitted). The term "process" refers to something issued by the court rather than the legal process of suing someone. *Id.* Similarly, in the Eleventh Circuit, "[t]he 'wrongful use of process' element requires a plaintiff to allege that the defendant wrongfully used process *after* initiating a proceeding[,]" meaning something other than the "mere continued pursuit of a wrongfully initiated claim" or "carry[ing] out the process to its authorized conclusion." *Vasser*, 2019 WL 6036799, at *3; *Smith v. Nationwide Mut. Ins. Co.*, 799 Fed. Appx. 768, 772 (11th Cir. 2020).

Here, there is absolutely no indication that Mr. Mims or any of the other Defendants have used "process" for any improper purpose. Whether in state court proceedings, this adversary proceeding, or the Debtor's main bankruptcy case, the only inference for the Court to draw, based on the allegations of the

complaint together with the record as a whole, is that the respective rights of the parties are in dispute and that the Defendants intend to litigate those disputes to their conclusion. To the extent Count VI is based on abuse of process, it fails to state a claim upon which relief can be granted.

As for the assertion of fraud on the court, it also fails to state a claim upon which relief can be granted. Based on the allegations in Count VI, it relates to how the TRO was obtained from the Alabama court. But fraud on the court is not a basis to relitigate matters already litigated or being litigated in other courts. *Andersen v. Roszkowski*, 681 F. Supp. 1284, 1292 (N.D. Ill. 1988). At least one court in the Seventh Circuit has concluded that it lacked subject-matter jurisdiction over claims of fraud on the court in another forum. *Freire v. Am. Med. Sys., Inc.,* 2024 WL 4145755, at *4 (N.D. Ill. Sept. 11, 2024). Regardless, redress for fraud upon the court must be sought from the court that was the victim of the fraud; it cannot be raised by independent action in another court. *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808-09 (7th Cir. 1969); *see also Atkins v. Heavy Petroleum Partners, LLC*, 2014 WL 3854215, at *3 (D. Kan. Aug. 6, 2014) (collecting authorities consistent with *Taft*). Because the Debtor seeks relief for fraud allegedly perpetrated on another court, it fails to state a claim upon which relief can be granted by this Court.

But if that were not enough, the Debtor's complaint fails to allege any facts that would support an inference of the type of misconduct that is actionable. Fraud on the court is "egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney

is implicated." *Brannan v. Wells Fargo Home Mtg., Inc. (In re Brannan)*, 485 B.R. 443, 452-53 (Bankr. S.D. Ala. 2013) (citations omitted); *Christian v. Murray*, 915 So. 2d 23, 28 (Ala. 2005). "Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Brannan*, 485 B.R. at 453 (citations omitted). What is alleged here is not fraud on the court and certainly not on par with the sort of egregious misconduct required. Rather, the Debtor alleges that either the TRO entered by the Alabama court falsely stated that counsel for Mims appeared before the court or counsel for Mims lied to the Debtor about appearing before the court. That is not fraud on the court. *Brown v. SEC*, 644 Fed. Appx. 957, 958-59 (11th Cir. 2016) (affirming district court dismissal of case with prejudice where claim was really one of fraud by the court rather than fraud on the court and noting that fraud between parties is likewise not fraud on the court); *Christian*, 915 So. 2d at 28 (fraud on court does not include fraud among parties without more) (citations omitted). Count VI will also be dismissed without prejudice.

### B. Abstention

The Defendants ask the Court to abstain from exercising jurisdiction over and hearing the Debtor's claims as alternative relief if the Court is not inclined to dismiss. As explained, the Debtor's complaint will be dismissed entirely. But that does not preclude the Court from also abstaining from hearing one or more claims brought by the Debtor here. *Quackenbush v. Allstate Ins. Co.*, 517 U.S.

706, 717-19 (1996); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021). Section 1334 of the Judicial Code, which grants this Court broad jurisdiction over bankruptcy cases and related proceedings, "permits and sometimes mandates abstention where a state court would have concurrent jurisdiction." *Hall v. Hall (In re Hall)*, 633 B.R. 350, 352-53 (Bankr. N.D. Ill. 2021).

Section 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. §1334(c)(1). This is known as permissive abstention. Mandatory abstention is provided for in paragraph (2) of the same subsection, which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. §1334(c)(2).

Here, as the Defendants point out, the Alabama litigation predates the Debtor's bankruptcy and remains pending. State law claims and issues at stake in the Alabama litigation predominate in this proceeding. Only Count III for violations of the automatic stay and Count V for turnover arise under the Bankruptcy Code, but both are to be dismissed for failure to state a claim. Count I, seeking relief under the Declaratory Judgment Act, purports to be based on federal law, but it presumes the validity of the Debtor's actions that are directly

at issue in the pending Alabama litigation and, as explained, is a "classic example" of when a federal court should decline to hear a declaratory action. Count II seeks to quiet title to properties that are the subject of the Alabama litigation. Count VI likewise improperly seeks relief from this Court for alleged conduct before the Alabama court and should be addressed by the Alabama court. Further, the parties were actively litigating the Alabama case when the Debtor filed his bankruptcy petition—the Alabama court had entered a TRO against the Debtor just before—and there is no reason to think that the Alabama court, versed in Alabama law, could not timely adjudicate the case involving Alabama real estate, business organizations, parties, and likely witnesses.

But even if abstention is not required under §1334(c)(2), this Court will exercise its discretion to permissively abstain under §1334(c)(1). The Seventh Circuit has adopted several factors for courts to consider in determining whether to abstain under §1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. §1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 6 F.3d 1184, 1189 (7th Cir. 1993). As a matter of discretion, the factors are applied "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Id.*

Most of the listed factors clearly weigh in favor of abstention. As explained, state law issues predominate over bankruptcy issues. And those state law issues are the subject of pending litigation in Alabama court involving the parties to this proceeding as well as others.[6] Among those not named as a party in this proceeding is John Michael Cohan—the Debtor's business associate and co-defendant in the Alabama case—whose efforts to intervene as an interested party here gives rise to other issues.[7] Then there is the timing of the Debtor's bankruptcy and his subsequent commencement of this proceeding, which came on the heels of the Alabama court entering a TRO precluding the Debtor from taking any action against the property that is the subject of his claims here and points to a strong likelihood of forum shopping by the Debtor.

There appears to be no jurisdictional basis for the action outside §1334, and, to the extent "core" bankruptcy issues are implicated, they are easily severed from the state law claims and could be brought by motion in the main bankruptcy case, separate and apart from this or any other adversary

---

[6] Defendants Erwin, Milner, Neal, and Seal are not defendants in the Alabama litigation but are attorneys or staff of attorneys representing parties in the Alabama case who would have no connection to the Debtor's bankruptcy case but for this adversary proceeding.

[7] The fact that the Debtor and Mr. Cohan, both acting pro se, are actively filing and trying to litigate here on each other's behalf is one of the more problematic issues. But there is also the fact that, while Mr. Cohan has asked to intervene, other defendants in the Alabama action who may an interest in the outcome of the disputes have not made similar requests.

proceeding. And in terms of effect on the efficient administration of the bankruptcy estate, abstaining would ease the bankruptcy court's docket and relieve it from trying to analyze and apply Alabama laws and procedures that the Alabama court has been asked and is better equipped to decide.

Abstention under the circumstances before the Court is further consistent with federal abstention doctrines outside of §1334(c). For instance, under the *Colorado River* abstention doctrine "a federal court may abstain and stay or dismiss a suit in deference to parallel state proceedings in exceptional circumstances where abstention would promote 'wise judicial administration.'" *Driftless*, 16 F.4th at 526 (citing *Colorado River,* 424 U.S. at 818). As discussed, the Debtor's claim for declaratory relief in Count I is a "classic example" of a situation in which a federal court should decline jurisdiction. *Amling,* 943 F.3d at 379-80. It would likewise be inappropriate for this Court to hear and decide the Debtor's quiet title action in Count II. *Dunlap,* 2014 WL 13111345, at *4; *Williams,* 2013 WL 271669, at *2-3. Similarly, Count VI is not properly brought in this proceeding, and the Court would decline to hear such an action based on the circumstances alleged even if it has jurisdiction over the claim.

Finally, in light of the circumstances, the Court finds "cause" exists for modifying the automatic stay, and, "[t]o promptly effectuate its determination that abstention is appropriate, the Court 'will exercise its authority to *sua sponte* lift the stay pursuant to 11 U.S.C. §§105(a) and 362(d)'" to allow the Alabama litigation to proceed. *In re Yellow Cab Affiliation, Inc.,* 659 B.R. 586, 596 (Bankr. N.D. Ill. 2024) (citing *Phillips v. Sanchez (In re Sanchez),* 1997 WL 861753, at *2

n.6 (Bankr. E.D. Va. Nov. 7, 1997), and *McDowell v. Stein,* 415 B.R. 584, 600-01 (S.D. Fla. 2009)). Section 105(a) permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and further provides that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. §105(a). Section 362(d) provides for granting relief from the automatic stay for "cause" which can have expansive application. In general, "cause" for modifying the automatic stay can be found "when equitable considerations weigh heavily in favor of the [interested party whose actions are stayed] and the debtor bears some responsibility for creating the problems." *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984).

The Debtor's bankruptcy appears to have been filed in large part for the purpose of frustrating the Mims Defendants' prepetition action against the Debtor, Mr. Cohan, and certain entities under their control based on their alleged fraud, breach of contract, wrongful foreclosure, and usurpation of property interests. Resolving the parties' disputes will require more than simple interpretation of contract and application of Alabama law governing fraud and contract; it will also involve issues of business organization and dissolution, foreclosure, and real estate deed recordings under state law. In addition, the Debtor has asserted in this proceeding claims relating to what occurred in the Alabama litigation that can only be decided by Alabama courts. Together with

the prejudice to Mr. Mims and the other Defendants here in having to litigate in Illinois bankruptcy court and the Debtor's plain efforts to block any defense and frustrate an orderly resolution of disputes, the circumstances of the Debtor's bankruptcy filing and the underlying Alabama litigation are sufficient "cause" for lifting the automatic stay to allow the Alabama litigation to proceed.

## IV.    Conclusion

This adversary proceeding is rife with issues. The Debtor's attempts to serve the Defendants with summons and the complaint were defective. The complaint itself fails to allege facts sufficient to state any claim for relief, and several of the intended claims seek relief not available from this Court or properly considered by another court. Not only should the complaint be dismissed, but it is also appropriate that this Court abstain from hearing the Debtor's nonbankruptcy claims.

Although the Debtor holds himself out as wanting to resolve his disputes with the Defendants in earnest, his conduct in seeking bankruptcy relief when he did and prosecuting this adversary in the manner that he has says otherwise. When the Mims Defendants filed their complaint and obtained a TRO against the Debtor in Alabama court, the Debtor sought bankruptcy protection rather than defend against the merits of the Alabama action. He then commenced this proceeding seeking relief from matters that had occurred in state court and an affirmative finding from this Court that he is the rightful owner of the property at issue in the Alabama litigation. In doing so, however, the Debtor has also

sought to block the Defendants at practically every turn from participating in his bankruptcy or defending against the claims asserted in this proceeding. If the Debtor truly wants to have his disputes with the Defendants resolved in a fair and orderly fashion, the place to litigate those issues is before the Alabama court. And to facilitate as much, this Court will enter an order lifting the automatic stay to allow the Alabama litigation to proceed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###